# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |  |
|---|---|---|
| | § | |
| AGIS SOFTWARE DEVELOPMENT LLC, | § | Case No. |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| BRIDGESTONE CORPORATION and | § | |
| BRIDGESTONE MOBILITY SOLUTIONS | § | |
| B.V., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff AGIS Software Development LLC ("AGIS Software" or "Plaintiff") files this Complaint against Defendants Bridgestone Corporation and Bridgestone Mobility Solutions B.V. (collectively, "Bridgestone" or "Defendant") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

## THE PARTIES

1.      Plaintiff AGIS Software is a limited liability company, organized and existing under the laws of the State of Texas, and maintains its principal place of business at 100 W. Houston Street, Marshall, Texas 75670. AGIS Software is the owner of all right, title, and interest in and to U.S. Patent Nos. 9,445,251, 9,467,838, 9,820,123, and 9,749,829 (the "Patents-in-Suit").

2.      On information and belief, Defendant Bridgestone Corporation is a corporation organized and existing under the laws of Japan, with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-Ku, Tokyo 104-8340, Japan. On information and belief, Bridgestone Corporation may be served with process through the Hague Convention or, in the alternative ,through its registered agent(s): CT Corp. System, 350 North St. Paul Street, Dallas, Texas 75201; CT Corp.

System., 811 Dallas Avenue, Houston, Texas 77002; and/or United Agent Group Inc. 5444 Westheimer, #1000, Houston, Texas 77056.

3.      On information and belief, Defendant Bridgestone Mobility Solutions B.V. is a corporation organized and existing under the laws of the Netherlands, with its principal place of business at Beethovenstraat 503, 1083 HK Amsterdam, Netherlands. On information and belief, Bridgestone Mobility Solutions B.V. may be served with process through the Hague Convention or, in the alternative, through its registered agent(s): CT Corp. System, 350 North St. Paul Street, Dallas, Texas 75201; CT Corp. System., 811 Dallas Avenue, Houston, Texas 77002; and/or United Agent Group Inc. 5444 Westheimer, #1000, Houston, Texas 77056.

4.      On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers for sale, and/or sells infringing products and services in the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with its products and services.

## JURISDICTION

5.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

6.      This Court has specific and personal jurisdiction over Defendant in this action because Defendant has committed acts within this Judicial District giving rise to this action and has established minimum contacts with this forum, such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by

others in this Judicial District, the State of Texas, and elsewhere in the United States by, among other things, offering to sell and selling products and/or services that infringe the Patents-in-Suit. Defendant has purposefully and voluntarily availed itself of the privileges of conducting business in the United States, the State of Texas, and this District by continuously and systematically placing goods into the stream of commerce through an established distribution channel with the expectation that they will be purchased by consumers in this District. Defendant, directly and/or through intermediaries (including distributors, sales agents, and others) ships, distributes, sells, offers to sell, imports, advertises, makes, and/or uses its products (including, but not limited to, the products accused of infringement here) in the United States, the State of Texas, and this District. Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

7.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendant has regular and established places of business in this Judicial District. For example, Defendant has physical locations at 101 East Grand Avenue, Marshall, Texas 75670-3316; 601 North High Street, Longview, Texas 75601-5329; 2559 Judson Road, Longview, Texas 75605-4643; 128 West SW Loop 323, Tyler, Texas 75701-8701; 409 North Eastman Road, Longview, Texas 75601; 1325 West Buckingham Road, Garland, Texas 75040. Defendant, through its own acts and/or through the acts of others, makes,

uses, sells, distributes, exports from, imports, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with this Judicial District, such that this venue is a fair and reasonable one.

## PATENTS-IN-SUIT

8.    On September 13, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,445,251 (the "'251 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks." On June 8, 2021, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate of the '251 Patent determining Claims 1-35 to be valid and patentable. A true and correct copy of the '251 Patent, which includes the June 8, 2021 Ex Parte Reexamination Certificate, is provided for download at the following publicly-available                                                               resource: https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9445251.

9.    On October 11, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,467,838 (the "'838 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks." On May 27, 2021, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate of the '838 Patent determining Claims 1-84 to be valid and patentable.  A true and correct copy of the '838 Patent, which includes the May 27, 2021 Ex Parte Reexamination Certificate, is provided for download at the following publicly-available                                                               resource: https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9467838.

10.    On November 14, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,820,123 (the "'123 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  On September 24, 2021, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate for the '123 Patent confirming the validity and patentability of Claims 1-48.  true and correct copy of the '123 Patent, which includes the September 24, 2021 Ex Parte Reexamination Certificate, is provided for download    at    the    following    publicly-available    resource: https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9820123.

11.    On August 29, 2017, the United States and Trademark Office duly and legally issued U.S. Patent No. 9,749,829 (the "'829 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks." On August 16, 2021, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate for the '829 Patent confirming the validity and patentability of Claims 1-68. A true and correct copy of the '829 Patent, which includes the August 16, 2021 Ex Parte Reexamination Certificate, is provided for download at the following    publicly-available    resource: https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9749829.

12.    AGIS Software is the sole and exclusive owner of all right, title, and interest in the Patents-in-Suit, and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. AGIS Software also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

13.    Malcolm K. "Cap" Beyer, Jr., a graduate of the United States Naval Academy and a former U.S. Marine, is the CEO of AGIS Software and a named inventor of the AGIS Software patent portfolio. Mr. Beyer founded Advanced Ground Information Systems, Inc. ("AGIS, Inc.") shortly after the September 11, 2001 terrorist attacks because he believed that many first responder and civilian lives could have been saved through the implementation of a better communication system. He envisioned and developed a new communication system that would use integrated software and hardware components on mobile devices to give users situational awareness superior to systems provided by conventional military and first responder radio systems.

14.    AGIS, Inc. developed prototypes that matured into its LifeRing system. LifeRing provides first responders, law enforcement, and military personnel with what is essentially a tactical operations center built into hand-held mobile devices. Using GPS-based location technology and existing or special-purpose cellular communication networks, LifeRing users can exchange location, heading, speed, and other information with other members of a group, view each other's locations on maps and satellite images, and rapidly communicate and coordinate their efforts.

15.    AGIS Software was formed in 2017 and maintains two offices located in the State of Texas, at 100 W. Houston Street, Marshall, Texas 75670 and at 2226 Washington Avenue, #2, Waco, Texas 76702. AGIS Software also maintains a data center in Marshall, Texas.

16.    Mr. Beyer has maintained longstanding ties to Texas and the Eastern District. In 1987, Mr. Beyer founded Advanced Programming Concepts, an Austin-based company focused on real-time tactical command and control systems. Advanced Programming Concepts was later

acquired by Ultra Electronics, Inc. and is now the Advanced Tactical Systems unit of Ultra Electronics, Inc., which is still based in Austin, Texas.

17.    AGIS Software licenses its patent portfolio, including the Patents-in-Suit, to AGIS, Inc. AGIS, Inc. has marked its products accordingly. AGIS Software and all previous assignees of the Patents-in-Suit have complied with the requirements of 35 U.S.C. § 287(a). On information and belief, Defendant has known about and has been on notice of its infringement of AGIS Software's patents, including the Patents-in-Suit, since at least the issuance date of the Patents-in-Suit.

18.    Defendant has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States applications, products, and/or services that infringe the Patents-in-Suit. Such applications, products, and/or services include at least any and all variations and versions of Webfleet and Azuga, and any implementation of location sharing applications, products, and/or services (collectively, the "Accused Products"). The Accused Products comprise Webfleet, Webfleet.connect, Webfleet mobile, Webfleet work app, any Webfleet software or application, any Webfleet servers and services, and any mobile devices, such as terminals and link devices configured for Webfleet. The Accused Products comprise Azuga software and applications, Azuga mobile, and Azuga web applications, any Azuga software or application, any Azuga servers and services, and any mobile devices, such as terminals and link devices configured for Azuga. The Accused Products infringe each of the Asserted Patents. On information and belief, the Azuga features are substantially similar and/or identical to the Webfleet features.

19.    The Accused Products include functionalities to form and/or join networks or groups. The Accused Products include functionalities to display map information, including

symbols corresponding with users, entities, and locations. The Accused Products include functionalities to share and view locations with other devices and/or users. The Accused Products include functionalities to display symbols corresponding to locations (including locations of other devices and/or users) on a map. The Accused Products include functionalities to communicate with other devices and/or users via text, voice, and/or multimedia-based communication. The Accused Products comprise the above and following functionalities, based on the identified publicly-available resources, which directly map to the below-identified claims of the Patents-in-Suit.



https://www.webfleet.com/en_us/webfleet/



https://www.webfleet.com/en_us/webfleet/fleet-management/vehicle-tracking/



https://www.webfleet.com/en_us/webfleet/products/webfleet/features/mobile/

## FEATURES

**VEHICLE AND ASSET TRACKING**
Locate your vehicles or assets[2] in real time, see where they're headed and get the driver's information.

**MAPS VIEW**
Find a single vehicle or the entire fleet on TomTom Maps or Google Maps, with the ability to search by using the vehicle list and filters, including vehicle availability, statuses, trip mode and groups.

https://www.webfleet.com/en_us/webfleet/products/webfleet/features/mobile/

## FEATURES

**TRAFFIC**
Plan routes around traffic with traffic information viewable on the map.

**MESSAGES**
View text, status and order messages. Send messages straight to the driver's PRO Driver Terminal.

**TRIP DATA**
Access previously recorded trip data by date for a single vehicle or the entire fleet. Check the start and finish points, the journey duration, the distance travelled, recorded trip/order details and the Driver ID.

**ORDERS**
Dispatch orders and view the progress of an order from a selected vehicle, including the location of the fleet handling the order and the estimated time of arrival.

**NOTIFICATIONS/ALERTS**
Get instant alerts whenever a vehicle enters or leaves a previously designated geo area and when an order status changes.

**LANGUAGE SUPPORT**
English, German, French, Dutch, Spanish, Portuguese, Italian, Polish, Czech, Swedish, Danish.



1. *Remaining Driving Times (RDT) or Tachograph Manager Plus/TachoShare Plus additional service is required*
2. *Asset tracking requires both the installation of LINK 340 tracking device and an active Asset Tracking tariff subscription.*

## GET THE APP

Existing Webfleet customers can download the FREE app for iPhone via the Apple App Store or for Android via the Google Play Store. Just log in with your Webfleet credentials.

https://www.webfleet.com/en_us/webfleet/products/webfleet/features/mobile/

# WEBFLEET Mobile

Bridgestone Mobility Solutions B.V.



https://play.google.com/store/apps/details?id=com.tomtom.business&hl=en_US



https://help.webfleet.com/en_us/videos/vehicle-tracking/quick-tour/



https://player.vimeo.com/video/735801054?color=ed1c24&app_id=122963



https://player.vimeo.com/video/735801054?color=ed1c24&app_id=122963



https://player.vimeo.com/video/735801054?color=ed1c24&app_id=122963



https://player.vimeo.com/video/735801054?color=ed1c24&app_id=122963



https://player.vimeo.com/video/735801054?color=ed1c24&app_id=122963



https://player.vimeo.com/video/735801054?color=ed1c24&app_id=122963



https://player.vimeo.com/video/805075980?color=ed1c24&app_id=122963



https://help.webfleet.com/en_us/videos/fleet-optimisation/
https://player.vimeo.com/video/805075980?color=ed1c24&app_id=122963

13



https://player.vimeo.com/video/742560913?color=ed1c24&app_id=122963



https://player.vimeo.com/video/742560913?color=ed1c24&app_id=122963



https://player.vimeo.com/video/742560913?color=ed1c24&app_id=122963



https://help.webfleet.com/en_us/videos/driver/
https://player.vimeo.com/video/848364795?color=ed1c24&app_id=122963



https://player.vimeo.com/video/848364795?color=ed1c24&app_id=122963



https://player.vimeo.com/video/848364795?color=ed1c24&app_id=122963



https://player.vimeo.com/video/848364795?color=ed1c24&app_id=122963



https://player.vimeo.com/video/848364795?color=ed1c24&app_id=122963



https://player.vimeo.com/video/848364795?color=ed1c24&app_id=122963



https://www.azuga.com/



https://www.azuga.com/

18



https://www.azuga.com/



https://www.azuga.com/fleet-tracking



**Live Maps Video**



The **LIVE** tab has the following information:

- **Vehicle/Asset** - name of the vehicle

- **Driver** - name of the driver

- **Date** - date and time each vehicle's status or activities were last updated, including the time zone

- **Address** - where the vehicle is currently located
  - Click on any row to see the vehicle's location on the map to the right of the table:
  - Toggle to satellite view by selecting '**Satellite**' at the top of the map.

- **Latest Activity** - includes the status of each vehicle
  - Values include Ignition On or Off, GPS Tracking, Speeding, Idling, and more.

- **Speed** - indicates the speed of each vehicle

- **Stop Time** - indicates how long each vehicle has been stationary

https://fleet-azuga.helpscoutdocs.com/article/30-product-manual

**Tracking a Vehicle Within the Breadcrumb View**

To navigate to a detailed view of a vehicle, select the vehicle name from the **LIVE** tab. From here, you can dive deeper into the trail of breadcrumbs left by a vehicle including each event and its corresponding address on the **Breadcrumb** view.



You can view all the vehicle activities like **Ignition On/Off**, **GPS Tracking**, **Hard Braking (HB)**, **Speeding**, **Low Braking**, etc. under the **Breadcrumb** view.

https://fleet-azuga.helpscoutdocs.com/article/30-product-manual

## Vehicles Overview

Navigate to the **Vehicles** page within **ADMIN** to view, add, and update vehicle information.

For a video explanation of the Vehicles section, please refer to the following link:

Vehicles Video



https://fleet-azuga.helpscoutdocs.com/article/30-product-manual

Drivers Video



From here, you can create or update driver profiles as well as modify associations between vehicles and drivers. You can modify the driver's name, phone number, email address, time zone and role in the system.

https://fleet-azuga.helpscoutdocs.com/article/30-product-manual

**Associating a Driver with a Beacon/Vehicle**

To associate a driver with a beacon from the Azuga Portal:

1. Select **Beacons** from within **Devices** in the **ADMIN** tab.

2. Select the pencil icon.

3. Select the **Driver** from the dropdown.



4. Select **Submit**.

## Groups Overview

You can organize vehicles based on a number of criteria from the **Groups** tab. You can group by their base location, the kind of tasks that these vehicles undertake on a daily basis, or the type of vehicles.

## Creating a Group

To create a Group:

1. Select **Add Group**.

2. Enter the **Group Name**.



https://fleet-azuga.helpscoutdocs.com/article/30-product-manual



https://fleet-azuga.helpscoutdocs.com/article/387-what-is-trackme

https://fleet-azuga.helpscoutdocs.com/article/274-how-do-i-create-a-low-battery-alert

20.     Defendant directly and/or indirectly intentionally instructs its customers to infringe the Patents-in-Suit through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the following publicly-available resources: https://portals.webfleet.com/s/article/Product-essentials-overview?language=en_AE;

https://portals.webfleet.com/s/article/WEBFLEET-Essentials?language=en_AE;

https://portals.webfleet.com/s/article/Webfleet-Work-App-Essentials?language=en_AE;

https://www.webfleet.com/en_ae/webfleet/products/mobile-apps/work-app/;

https://portals.webfleet.com/s/article/Webfleet-Work-App-User-guide;

https://portals.webfleet.com/s/article/WEBFLEET-connect-Essentials?language=en_AE;

https://portals.webfleet.com/s/article/How-to-apply-for-WEBFLEET-connect?language=en_AE;

https://portals.webfleet.com/s/article/WEBFLEET-connect-API-

documentation?language=en_AE;

https://portals.webfleet.com/s/article/CWEBFLEET-Mobile-Essentials?language=en_AE;

https://portals.webfleet.com/s/article/How-to-enable-WEBFLEET-connect-access-for-a-

WEBFLEET-user?language=en_AE;

https://help.webfleet.com/en_us/videos/administrator/;https://help.webfleet.com/en_us/videos/ve

hicle-tracking/;

https://help.webfleet.com/en_us/videos/fleet-optimisation/;

https://help.webfleet.com/en_us/videos/workflow-management/;

https://help.webfleet.com/en_us/videos/green-and-safe/;

https://help.webfleet.com/en_us/videos/driver/;

https://fleet-azuga.helpscoutdocs.com/article/30-product-manual;

https://drive.google.com/file/d/1NmD8sddKnAuYAiBGJJzdDgwQAs_2MdeT/view;

https://drive.google.com/file/d/11nwQsXFni-kDippBPrHSZykfzpqBD9B0/view;

https://drive.google.com/file/d/1_mAHU6zY8_pWlTytB1hxvlsK04WFhe1S/view;

https://drive.google.com/file/d/1PrEqqc9YJstx618FsRfEoBAHjbm3ZSsJ/view;

https://fleet-azuga.helpscoutdocs.com/article/34-live-training-webinar;

https://www.azuga.com/fleet-mobile;

https://www.azuga.com/downloads/fleetmobile-smartphone-standalone-edition;

https://fleet-azuga.helpscoutdocs.com/;

https://fleet-azuga.helpscoutdocs.com/category/102-general

## COUNT I
### (Infringement of the '251 Patent)

21.     Paragraphs 1 through 20 are incorporated herein by reference as if fully set forth in their entireties.

22.     AGIS Software has not licensed or otherwise authorized Defendant to use and/or manufacture any Accused Products and/or products that embody the inventions of the '251 Patent.

23.     Defendant has and continues to directly infringe at least Claim 24 of the '251 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

24.     Defendant has and continues to indirectly infringe at least Claim 24 of the '251 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '251 Patent. For example, Defendant, with knowledge that the Accused Products infringe the '251 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '251 Patent in violation of 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '251 Patent but remained willfully blind to the infringing nature of others' actions.

25.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 24 of the '251 Patent in the United States because Defendant's customers use the Accused Products, including at least the Accused Products of applications, products, and/or services, alone or in conjunction with additional Accused Products, in accordance with

25

Defendant's instructions and thereby infringe at least Claim 24 of the '251 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the publicly-available resources identified herein. Defendant is thereby liable for infringement of the '251 Patent under 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '251 Patent but remained willfully blind to the infringing nature of others' actions.

26.    For example, Defendant directly infringes and/or indirectly infringes by a system comprising: a first device programmed to perform operations comprising: receiving a message from a second device, wherein the message relates to joining a group; based on receiving the message from the second device, participating in the group, wherein participating in the group includes sending first location information to a server and receiving second location information from the server, the first location information comprising a location of the first device, the second location information comprising a plurality of locations of a respective plurality of second devices included in the group; presenting, via an interactive display of the first device, a first interactive, georeferenced map and a plurality of user-selectable symbols corresponding to the plurality of second devices, wherein the symbols are positioned on the first georeferenced map at respective positions corresponding to the locations of the second devices, and wherein the first georeferenced map includes data relating positions on the first georeferenced map to spatial coordinates; sending, from the first device to the server, a request for a second georeferenced map different from the first georeferenced map, wherein the request specifies a map location; receiving, from the server, the second georeferenced map, wherein the second georeferenced map includes the requested location and data relating positions on the second georeferenced map to spatial coordinates;

presenting, via the interactive display of the first device, the second georeferenced map and the plurality of user-selectable symbols corresponding to the plurality of second devices, wherein the symbols are positioned on the second georeferenced map at respective positions corresponding to the locations of the second devices; and identifying user interaction with the interactive display selecting one or more of the user-selectable symbols corresponding to one or more of the second devices and positioned on the second georeferenced map and user interaction with the display specifying an action and, based thereon, using an Internet Protocol to send data to the one or more second devices via the server, wherein the first device does not have access to respective Internet Protocol addresses of the second devices.

27.    For example, on information and belief, and based on the publicly-available resources identified herein, the Accused Products are configured and/or programmed at least to allow devices and/or users to share their locations and view other devices' and/or users' locations on a map and to communicate with those devices and/or users via the Accused Products; to allow devices and/or users to establish groups and to exchange messages via interaction with servers and relevant services; to allow devices and/or users to retrieve map information from multiple sources; to receive messages from other devices and/or users where those messages relate to joining groups; to facilitate participation in the group by communicating with a server and sending to and receiving location information; to present location information on interactive displays on the Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices and/or users; to place symbols on the map at positions corresponding to the locations of the other devices and/or users; to permit devices and/or users to request and display additional maps by, for example, moving the map screen and/or by selecting different types of

maps; and to permit interaction with the display where a device and/or user may select one or more symbols; and to permit data to be sent to other devices and/or users based on that interaction.

28.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '251 Patent in an amount to be proved at trial.

29.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '251 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

<u>**COUNT II**</u>
**(Infringement of the '838 Patent)**

30.     Paragraphs 1 through 20 are incorporated herein by reference as if fully set forth in their entireties.

31.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, distribute, export from, or import any products that embody the inventions of the '838 Patent.

32.     Defendant has and continues to directly infringe at least Claim 54 of the '838 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

33.     Defendant has and continues to indirectly infringe at least Claim 54 of the '838 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '838 Patent. For example, Defendant, with knowledge that the Accused Products infringe the '838 Patent at least as of the

date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of the '838 Patent.

34.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 54 of the '838 Patent in the United States because Defendant's customers use the Accused Products, including at least the Accused Products Application and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least one claim of the '838 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the resources identified herein. Defendant is thereby liable for infringement of the '838 Patent under 35 U.S.C. § 271(b).

35.     For example, Defendant directly infringes and/or indirectly infringes by a system comprising: a first device programmed to perform operations comprising: joining a communication network corresponding to a group, wherein joining the communication network comprises transmitting a message including an identifier corresponding to the group; participating in the group, wherein participating in the group includes sending first location information to a first server and receiving second location information from the first server, the first location information comprising a location of the first device, the second location information comprising one or more locations of one or more respective second devices included in the group; presenting, via an interactive display of the first device, a first interactive, georeferenced map and a first set of one or more user-selectable symbols corresponding to a first set of one or more of the second devices, wherein the first set of symbols are positioned on the first georeferenced map at respective positions corresponding to the locations of the first set of second devices, and wherein first

georeferenced map data relate positions on the first georeferenced map to spatial coordinates; sending, to a second server, a request for second georeferenced map data different from the first georeferenced map data; receiving, from the second server, the second georeferenced map data; presenting, via the interactive display of the first device, a second georeferenced map and a second set of one or more user-selectable symbols corresponding to a second set of one or more of the second devices, wherein the second set of symbols are positioned on the second georeferenced map at respective positions corresponding to the locations of the second set of second devices, and wherein the second georeferenced map data relate positions on the second georeferenced map to spatial coordinates; and identifying user interaction with the interactive display selecting one or more of the second set of user-selectable symbols corresponding to one or more of the second devices and positioned on the second georeferenced map and user interaction with the display specifying an action and, based thereon, sending third data to the selected one or more second devices via the first server.

36.    For example, on information and belief, and based on the publicly-available resources identified herein, the Accused Products are configured and/or programmed at least to allow devices and/or users to share their locations and view other devices' and/or users' locations on a map and to communicate with those devices and/or users via the Accused Products; to allow devices and/or users to establish groups and to exchange messages via interaction with servers and other relevant services; to allow devices and/or users to retrieve map information from multiple sources, including different types of maps; to receive messages from other devices and/or users where those messages relate to joining groups; to facilitate participation in a group by communicating with a server and sending to and receiving location information; to present location information on interactive displays on the exemplary Accused Products which include interactive

maps and a plurality of user selectable symbols corresponding to other devices and/or users; to place symbols on a map at positions corresponding to the locations of the other devices and/or users; to permit devices and/or users to request and display additional maps by, for example, moving the map screen and/or by selecting satellite image maps; to permit interaction with the display where a device and/or user may select one or more symbols; and to permit data to be sent to other devices and/or users based on an interaction.

37.    AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '838 Patent in an amount to be proved at trial.

38.    AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '838 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## COUNT III
### (Infringement of the '123 Patent)

39.    Paragraphs 1 through 20 are incorporated herein by reference as if fully set forth in their entireties.

40.    AGIS Software has not licensed or otherwise authorized Defendant to use or manufacture any products that embody the inventions of the '123 Patent.

41.    Defendant has and continues to directly infringe at least Claim 23 of the '123 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

42.    Defendant has and continues to indirectly infringe at least Claim 23 of the '123 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing,

exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '123 Patent. For example, Defendant, with knowledge that the Accused Products infringe the '123 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '123 Patent in violation of 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '123 Patent but remained willfully blind to the infringing nature of others' actions.

43.    For example, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 23 of the '123 Patent in the United States because Defendant's customers use the Accused Products, including at least the Accused Products of applications, products, and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby infringe at least Claim 23 of the '123 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the publicly-available resources identified herein. Defendant is thereby liable for infringement of the '123 Patent under 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '123 Patent but remained willfully blind to the infringing nature of others' actions.

44.    Upon information and belief, Defendant directly infringes and/or indirectly infringes by a system comprising: a first device programmed to perform operations comprising: receiving a message sent by a second device, wherein the message relates to joining a group; based on receipt of the message sent by the second device, sending first location information to a first server and receiving second location information from the first server, the first location

information comprising a location of the first device, the second location information comprising one or more locations of one or more respective second devices included in the group; sending, from the first device to a second server, a request for georeferenced map data; receiving, from the second server, the georeferenced map data; presenting, via an interactive display of the first device, a georeferenced map and one or more user-selectable symbols corresponding to one or more of the second devices, wherein the symbols are positioned on the georeferenced map at respective positions corresponding to the locations of the second devices represented by the symbols, and wherein the georeferenced map data relate positions on the georeferenced map to spatial coordinates; and identifying user interaction with the interactive display selecting a particular user-selectable symbol corresponding to a particular second device and user interaction with the display specifying an action and, based thereon, using an Internet Protocol to send data to the particular second device, wherein identifying the user interaction selecting the particular user-selectable symbol comprises: detecting user selection of a portion of the interactive display corresponding to a position on the georeferenced map, and identifying the particular user-selectable symbol based, at least in part, on coordinates of the selected position, comprising: searching a set of symbols for a symbol located nearest to the coordinates of the selected position, wherein the set of symbols includes the user-selectable symbols corresponding to the second devices in the group, and wherein data associated with the set of symbols include coordinates of portions of the display corresponding to the symbols in the set, and based on a result of searching the set of symbols, identifying the particular user-selectable symbol as the symbol located nearest to the coordinates of the selected position, wherein the particular user-selectable symbol corresponds to the particular second device.

45.     For example, on information and belief, and based on the publicly-available resources identified herein, the Accused Products are configured and/or programmed at least to allow devices and/or users to share their locations and view others' locations on a map and to communicate with those devices and/or users via the Accused Products; to allow devices and/or users to establish groups and to exchange messages via interaction with servers and other relevant services; to form and join groups by transmitting messages; to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information; to present location information on interactive displays on the Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices and/or users; to place symbols on the map at positions corresponding to the locations of the other devices and/or users; to permit devices and/or users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting other types of maps; to permit interaction with the display, where devices and/or users may select one or more symbols; and to permit data to be sent to other devices and/or users based on an interaction.

46.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '123 Patent in an amount to be proved at trial.

47.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '123 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '829 Patent)

48.     Paragraphs 1 through 20 are incorporated herein by reference as if fully set forth in their entireties.

49.    AGIS Software has not licensed or otherwise authorized Defendant to make, use offer for sale, sell, distribute, export from, or import any products that embody the inventions of the '829 Patent.

50.    Defendant has and continues to directly infringe at least Claim 34 of the '829 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting form, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

51.    Defendant has and continues to indirectly infringe at least Claim 34 of the '829 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '829 Patent. For example, Defendant, with knowledge that the Accused Products infringe the '829 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '829 Patent in violation of 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '829 Patent but remained willfully blind to the infringing nature of others' actions.

52.    For example, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 34 of the '829 Patent in the United States because Defendant's customers use the Accused Products, including at least the Accused Products of applications, products, and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby infringe at least Claim 34 of the '829 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to

infringe through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the publicly-available resources identified herein. Defendant is thereby liable for infringement of the '829 Patent under 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '829 Patent but remained willfully blind to the infringing nature of others' actions.

53.    For example, Defendant directly infringes and/or indirectly infringes by a system comprising: a second device programmed to perform operations comprising: receiving from a first device via a first server, a request to join a group, wherein the group includes the first device; sending, to the first server, an indication of acceptance of the request, wherein the first server is configured to join the first device to the group based on the acceptance of the request, and wherein joining the first device to the group comprises authorizing the first device to repeatedly share device location information and repeatedly engage in remote control operations with each device included in the group; sending a first message to the first server, wherein the first message comprises data identifying the first device and a request for a first updated location of the first device, and wherein the first server is configured to send a second message to the first device based on and in response to receiving the first message from the second device, wherein the second message comprises a request for the first updated location of the first device; after sending the first message, receiving, from the first server, a response to the first message, the response including first location information comprising the first updated location of the first device; receiving from a second server, georeferenced map data; presenting, via a display of the second device, a georeferenced map based on the georeferenced map data and a symbol corresponding to the first device; wherein the symbol is positioned on the georeferenced map at a first position corresponding to the first updated location of the first device, and wherein the georeferenced map

data relate positions on the georeferenced map to spatial coordinates; after receiving the first location information and the georeferenced map data, and after presenting the georeferenced map and the symbol positioned on the georeferenced map at the first position corresponding to the first updated location of the first device, receiving second location information comprising a second updated location of the first device from the first server, and using the server-provided georeferenced map data and the second location information to reposition the symbol on the georeferenced map at a second position corresponding to the second updated location of the first device; and identifying user interaction with the display specifying an action and, based thereon, sending, to the first server, a third message related to remotely controlling the first device to perform an action, wherein the first server is configured to send a fourth message to the first device based on receiving the third message from the second device, wherein the fourth message relates to remotely controlling the first device to perform the action, and wherein the first device is configured to perform the action based on receiving the fourth message. For example, the Accused Products include features, as shown below.

54.    For example, on information and belief, and based on the publicly-available resources identified herein, the Accused Products are configured and/or programmed at least to allow devices and/or users to share their locations and view others' locations on a map and to communicate with those devices and/or users via the Accused Products; to allow devices and/or users to establish groups and to exchange messages via interaction with servers and other relevant services; to form and join groups by transmitting messages; to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information; to present location information on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices

and/or users; to place symbols on the map at positions corresponding to the locations of the other devices and/or users; to permit devices and/or users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting other types of maps; to permit interaction with the display, where a device and/or user may select one or more symbols; to permit data to be sent to other devices based on an interaction; and to cause an action by sending messages related to remote control.

55.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '829 Patent in an amount to be proved at trial.

56.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '829 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AGIS Software prays for relief against Defendant as follows:

a.     Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.     Entry of judgment declaring that Defendant's infringement of the Patents-in-Suit has been willful and deliberate;

c.     An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

d.    An order awarding damages sufficient to compensate AGIS Software for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

e.    An order awarding AGIS Software treble damages under 35 U.S.C. § 284 as a result of Defendant's willful and deliberate infringement of the Patents-in-Suit;

f.    Entry of judgment declaring that this case is exceptional and awarding AGIS Software its costs and reasonable attorney fees under 35 U.S.C. § 285; and

g.    Such other and further relief as the Court deems just and proper.

Dated:  September 5, 2025                Respectfully submitted,

 /s/ Alfred R. Fabricant
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email:  plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email:  vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

*ATTORNEYS FOR PLAINTIFF*
*AGIS SOFTWARE DEVELOPMENT LLC*